**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

MELINDA BARKLEY, VICKIE
DAWDY, BEN CURRY, JENNIFER
CURRY, and SHANIN SIMON,

       Plaintiffs,

vs.

WOODBURY COUNTY, IOWA,
GLENN J. PARRETT, individually and as
Sheriff of Woodbury County, and
ROBERT E. ASPLEAF, individually and
as Assistant Chief/Deputy Sheriff of
Woodbury County,

      Defendants.

No. C 10-4106-MWB


**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS**

———————————————

**TABLE OF CONTENTS**

I.    **INTRODUCTION**..................................................................... 3
    A.    *Factual Background* .................................................. 4
    B.    *Procedural Background* ............................................. 6
    C.    *The Denial Of Class Certification In The Predecessor Case*............. 10
    D.    *Arguments Of The Parties* ......................................... 13

II.   **LEGAL ANALYSIS** ................................................. 15
    A.    *Applicable Standards*.............................................. 15
        1.    *Rule 12(b)(6) and the statute of limitations* ......................... 15
        2.    *The applicable statute of limitations*................................. 16
        3.    *The tolling rule for members of a prior putative class* ........... 17
           a.    *The general rule*.................................................. 17
           b.    *Individual claims vs. class claims*............................ 18
           c.    *The tolling period* ............................................. 25
           d.    *The controlling reasons for the prior denial*................ 34

  **B.**  ***Application Of The Standards***................................................ **39**
    ***1.***  *Prerequisites to application of tolling rules* ......................... **39**
    ***2.***  *The tolling period* ....................................................... **41**
    ***3.***  *Alternative conclusions*................................................. **42**
**III.** **CONCLUSION** .......................................................................... **44**

Persons arrested on serious misdemeanor charges assert individual and class claims that they were unconstitutionally strip-searched pursuant to an across-the-board jail policy without individualized determinations of probable cause or reasonable suspicion. The question on the defendants' motion to dismiss now before me, however, is not the merits of the plaintiffs' claims, but whether their claims are barred by the applicable statute of limitations and my denial of class certification in a predecessor case involving nearly identical claims of a nearly identical putative class.[1] Thus, the motion to dismiss requires me to probe the workings of the so-called *"American Pipe rule"*[2] to determine whether the statute of limitations was tolled on the individual and class claims of putative class members in this case during the pendency of the request to certify the putative class action in the predecessor case.

---

[1] *See Rattray v. Woodbury County*, 253 F.R.D. 444 (N.D. Iowa 2008), *aff'd*, 614 F.3d 831 (8th Cir. 2010).

[2] *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

# I.    INTRODUCTION

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Thus, the factual background to a motion to dismiss must necessarily be drawn from the plaintiffs' factual allegations.   However, while the defendants' motion to dismiss was pending in this case, the plaintiffs were allowed to amend their Complaint in a manner that they represented had no effect upon the issues raised in the motion to dismiss.   I agree that the latest amendment to the plaintiffs' Complaint does not have any impact on the issues raised in the motion to dismiss.   Indeed, the defendants filed a motion to dismiss and supporting brief in response to the latest amendment of the complaint that are essentially identical to their prior motion to dismiss and supporting brief. Moreover, the latest amendment dropped one of the original named plaintiffs and added three others.[3]  For practical reasons, then, the factual background presented here is not drawn from the plaintiffs' December 3, 2010, Amended Class Action Complaint And Jury Demand (Amended Complaint) (docket no. 4), which was the operative pleading at the time that the defendants filed their motion to dismiss, but from the plaintiffs' May 10, 2012, Second Amended Class Action Complaint And Jury Demand (Second Amended Complaint) (docket no. 27).

---

[3] As I will explain more fully, below, original plaintiff Amy Meyer was dropped from the Second Amended Complaint, because the plaintiffs did not believe that she was a member of their class, as it had been redefined in the Second Amended Complaint in light of *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. ___, 132 S. Ct. 1510 (2012).

## A.      *Factual Background*

Plaintiffs Melinda Barkley, Vickie Dawdy, Ben Curry, Jennifer Curry (then known as Jennifer McGrain), and Shanin Simon (the Barkley Plaintiffs) allege that they were each citizens of Sioux City, Woodbury County, Iowa, and that each was arrested for a serious misdemeanor between February 1, 2006, and October 15, 2007, then booked into the Woodbury County Jail.   Specifically, Barkley alleges that, on September 25, 2006, she was arrested on a serious misdemeanor charge of operating a vehicle while intoxicated (OWI), first offense, in violation of IOWA CODE § 321J.2; Dawdy alleges that, on July 18, 2007, she was arrested on a serious misdemeanor shoplifting charge; Ben Curry alleges that, on July 19, 2007, he was arrested on a serious misdemeanor OWI charge; Jennifer Curry alleges that, on July 10, 2007, she was arrested on a serious misdemeanor OWI charge; and Simon alleges that, on November 12, 2006, she was arrested on a serious misdemeanor OWI charge.   Each plaintiff, with the exception of Simon, alleges that, upon being booked into the Woodbury County Jail after her or his arrest, an officer of the same sex as the plaintiff placed the plaintiff in an adjacent room, instructed the plaintiff to remove her or his clothes, including undergarments, for a strip search, and then told the plaintiff to turn around and spread the plaintiff's butt checks, so that the jailer could conduct a visual inspection of the plaintiff's body cavities (anal or anal and vaginal, as the case may be). Barkley and Jennifer Curry allege that the door to the room in which their searches were conducted was not completely shut, and Jennifer Curry alleges that male officers actually watched her strip search.   Barkley, Dawdy, and the Currys allege that the door to the room had a window that allowed anyone who wanted to observe the strip search to do so.   Simon alleges that she was too intoxicated to comply with instructions and was not able to remain entirely conscious, so that she was forcibly strip searched by both male and female jailers.   The Barkley Plaintiffs allege that no weapons or

4

contraband were found during their searches. Each alleges that she or he was searched without probable cause to believe that such a search was necessary.

The Barkley Plaintiffs allege that, from at least 1980 until October 15, 2007, Woodbury County, through the Woodbury County Jail, maintained an unwritten blanket policy, regulation, official decision, custom, or usage to conduct strip searches, including visual body cavity inspection, of pretrial detainees. They allege that this policy provided that any person arrested on a charge of a serious misdemeanor and booked into the Woodbury County Jail, including anyone who was not admitted to the general jail population, was strip searched without any individualized, reasonable suspicion, based on articulable facts, that the person to be strip-searched was concealing contraband, drugs, or weapons, and without regard to the scope of the particular intrusion, the manner in which the strip search was conducted, the justification for initiating the strip search, and the place in which the strip search was conducted. They allege that the unwritten policy failed to weigh the need for the strip searches of serious misdemeanor arrestees against the invasion of personal rights that the searches entailed, and violated their right to be free from unreasonable searches and seizures, all in violation of the Fourth Amendment to the United States Constitution. They also allege that the strip searches, including visual body cavity inspections, conducted pursuant to the unwritten policy were demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signified degradation and submission, thereby damaging the arrestees. Finally, they allege that, from February 1, 2006, until October 15, 2007, at 3:00 p.m., when the policy was withdrawn, approximately 3,000 individuals were arrested on serious misdemeanor charges and subjected to the unwritten strip-search policy.

### B.     Procedural Background

On November 5, 2010, the Barkley Plaintiffs filed their original Class Action Complaint And Jury Demand (docket no. 2), pursuant to 42 U.S.C. § 1983, asserting that the strip searches to which they and class members were subjected violated the Fourth Amendment to the United States Constitution.   They named as defendants Woodbury County, Glenn J. Parrett, individually and as Sheriff of Woodbury County, and Robert E. Aspleaf, individually and as Assistant Chief/Deputy Sheriff of Woodbury County.   They filed an Amended Class Action Complaint And Jury Demand (Amended Complaint) (docket no. 4) on December 3, 2010, before any responsive pleading or motion to dismiss had been filed by any defendant.   In their Amended Complaint, the class of similarly-situated persons that the Barkley Plaintiffs seek to represent was defined as "all persons arrested on a serious misdemeanor charge and strip searched, including visual body cavity inspection, pursuant to [the defendants'] across-the-board strip search policy from February 1, 2006, until October 15, 2007, at 3:00 p.m."

In **Counts I** and **II** of the Amended Complaint, the Barkley Plaintiffs assert individual and class claims, respectively, of unreasonable search and seizure of the person in violation of the Fourth Amendment to the United States Constitution against defendant Woodbury County.   In **Counts III** and **IV** of the Amended Complaint, they assert individual and class claims, respectively, of unreasonable search and seizure of the person in violation of the Fourth Amendment to the United States Constitution against individual defendants Parrett and Aspleaf.   On **Counts I** through **IV**, the Barkley Plaintiffs seek judgment against the defendants identified in each count, in an amount that will fully and fairly compensate the individual plaintiffs or the class, as the case may be, for their injuries and damages, for attorneys' fees, for interest and costs as allowed by law, and for such other and further relief as the court deems appropriate. The plaintiffs do not further categorize their damages as either compensatory, punitive,

or both, nor do they specify the nature of their damages as, for example, for physical injury or emotional distress.  In **Count V**, they assert a claim for declaratory relief that the defendants' former unwritten and across-the-board policy of conducting strip searches, including visual body cavity inspections, of all individuals arrested and booked into the Woodbury County Jail on a serious misdemeanor charge, without regard to whether reasonable suspicion existed to perform such a strip search, was unconstitutional.

On January 10, 2011, the defendants filed a joint Motion To Dismiss (docket no. 5), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the Barkley Plaintiffs' claims in their Amended Complaint (and by extension, their Second Amended Complaint) are barred by the applicable statute of limitations.  The defendants argue that the statute of limitations was not tolled during the pendency of a motion to certify a nearly identical putative class asserting nearly identical claims in the predecessor cases consolidated as *Rattray v. Woodbury County*, No. C 07-4014-MWB (N.D. Iowa), *see Rattray v. Woodbury County*, 253 F.R.D. 444 (N.D. Iowa 2008), *aff'd*, 614 F.3d 831 (8th Cir. 2010), because the denial of class certification in that case was based on a defect in the class itself.  After an extension of time to do so, the Barkley Plaintiffs filed a Resistance To Defendants' Motion To Dismiss (docket no. 12) on February 10, 2011.  The defendants filed a Reply (docket no. 14), in further support of their Motion To Dismiss, on February 17, 2011.

I did not reach the defendants' Motion To Dismiss when it first became ripe, however.  Instead, on March 24, 2011, I entered an Order Staying Case (docket no. 15), after *sua sponte* considering whether to impose the same stay that I had entered in

the *Rattray* case,[4] in light of the petition for *certiorari* pending before the Supreme Court in *Florence v. Board of Chosen Freeholders of the County of Burlington*, 621 F.3d 296 (3d Cir. 2011), *petition for cert. filed*, 79 U.S.L.W. 3442, 2011 WL 220710 (Jan. 19, 2011) (No. 10-945). After the Supreme Court granted *certiorari* in *Florence*, I entered an Order Continuing Stay Of Cases (docket no. 16), on April 4, 2011, in both this case and the *Rattray* case in which I *sua sponte* continued the stay until such time as the Supreme Court issued its final decision in *Florence*. On April 5, 2011, I entered an Order For Reports On Continuing Stay Of Cases (docket no. 17), again in both this case and the *Rattray* case, seeking the parties' input on whether or not to continue the stay until such time as the Supreme Court issued its final decision in *Florence*. On April 21, 2011, after receiving and considering the parties' input, and over the plaintiffs' objections, I entered an Order Continuing Stay Of Cases (docket no. 20), until such time as the Supreme Court issued its final decision in *Florence*.

On April 2, 2012, the Supreme Court issued its long-awaited decision in *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. ___, 132 S. Ct. 1510 (2012). That same day, I entered an Order For Status Reports (docket no. 21), again in both this case and the *Rattray* case, directing the parties to confer and to file a joint status report indicating each party's position on the impact of the *Florence* decision on each of these cases and what, if any, further proceedings were required in each case. The plaintiffs in both this case and the *Rattray* case filed their Status Report (docket no. 22) on April 16, 2012. Subsequently, because defendants' counsel had been involved in a trial before me for most of the preceding two weeks, I orally granted the parties until April 20, 2012, to file a joint or supplemental status report including

---

[4] The Order staying the *Rattray* case was entered on March 16, 2011. The parties in the *Rattray* case are represented by the same counsel as the parties in the present case.

the defendants' position.  The parties filed a Joint Supplemental Status Report (docket no. 23) on April 20, 2012.  In an Order Regarding Further Proceedings (docket no. 24), I responded to the parties' Joint Supplemental Status Report, *inter alia*, by lifting the stay, directing the parties to confer and to prepare a Proposed Scheduling Order for further proceedings, and advising the parties in this case that I would now address the pending Motion To Dismiss at my earliest convenience.

On May 10, 2012, a magistrate judge granted the Barkley Plaintiffs' May 9, 2012, Motion For Leave To File Second Amend[ed] Complaint (docket no. 25), *see* Order (docket no. 26), and the Barkley Plaintiffs' Second Amended Class Action Complaint And Jury Demand (Second Amended Complaint) (docket no. 27) was filed that day.  The Second Amended Complaint narrows the class somewhat, in light of the Supreme Court's decision in *Florence*, redefining the class as follows:  "All persons arrested on a serious misdemeanor charge *who were not admitted to the general jail population*, and were strip searched, including visual body cavity inspection, pursuant to Defendant's [sic] across-the-board strip search policy from February 1, 2006 until October 15, 2007 at 3:00 p.m."  Second Amended Complaint, ¶¶ 2 and 17 (emphasis added to highlight added language).  The plaintiffs also represented that the Second Amended Complaint required them to delete original named plaintiff Amy Meyer, because she may have been strip searched prior to being admitted to the general jail population and, therefore, would not be a member of the proposed class.  *See* Plaintiffs' Motion For Leave To Amend (docket no. 25), ¶ 6.  The Second Amended Complaint also added plaintiffs Ben Curry, Jennifer Curry, and Shanin Simon, seeking to assert individual claims and to represent the putative class.  *See id.* at ¶ 4.  The Second Amended Complaint did not modify the claims at issue.

The Barkley Plaintiffs' counsel represented in the Motion For Leave To Amend, ¶ 7, that the proffered Second Amended Complaint did not have any effect on the

defendants' pending Motion To Dismiss, and I agree.   Nor do I believe that supplemental briefing or oral arguments are required on the defendants' Motion To Dismiss, despite the time that has elapsed since the Motion was filed and the stay was imposed, or the filing of the Second Amended Complaint, because no applicable law nor pertinent circumstances have changed, and my crowded schedule does not allow me to set oral arguments within a reasonable time.   This conclusion is confirmed by the defendants' filing, on May 22, 2012, of a Motion To Dismiss Second Amended Complaint (docket no. 29) and a supporting brief that are essentially identical to the Motion To Dismiss and supporting brief challenging the Amended Complaint. Therefore, I will deem the defendants' Motion To Dismiss fully submitted on the written submissions.

### C.      The Denial Of Class Certification In The Predecessor Case

To put in context the parties' arguments concerning the defendants' Motion To Dismiss, I will briefly summarize the class certification proceedings in the predecessor *Rattray* case.   On February 13, 2007, Maureen Rattray filed an individual claim, pursuant to 42 U.S.C. § 1983, against Woodbury County alleging that a strip search after her arrest on or about August 16, 2006, violated the Fourth and Fourteenth Amendments to the United States Constitution.  *See Rattray v. Woodbury County*, 253 F.R.D. 444, 448-49 (N.D. Iowa 2008).   On October 31, 2007, Rattray was granted leave to amend her complaint to add claims on behalf of a putative class.   On May 27, 2008, similar actions by plaintiffs Lisa Lambert and Lori Mathes were consolidated with Rattray's action, and on August 18, 2008, the plaintiffs in the consolidated case were granted leave to amend their class-action complaint to add Glenn Parrett, the

Sheriff of Woodbury County, and Robert Aspleaf, Assistant Chief/Deputy Sheriff, as additional defendants. *Id.* at 449.

On April 28, 2008, just the day before moving to consolidate her action with the actions filed by Lambert and Mathes, Rattray filed her motion requesting certification of a class defined as follows: "All persons arrested on a serious misdemeanor charge and strip searched pursuant to defendant jail's across-the-board strip search policy from February 13, 2005 until October 15, 2007 at 3:00 p.m."" *Rattray v. Woodbury County*, No. C 07-4014-MWB, Plaintiff's Brief In Support Of Her Motion Directing That Action Proceed As Class Action (docket no. 44-6), 5; *compare Rattray*, 253 F.R.D. at 447 (identifying the putative class as "all persons arrested on a serious misdemeanor charge and strip searched pursuant to the defendant county jail's across-the-board strip search policy during a twenty-one month period prior to a change in the policy."). On September 2, 2008, I denied Rattray's motion to certify that class on four grounds.

First, although I concluded that the Rule 23(a) requirements of "numerosity," "typicality," and "commonality" were met, I was "not convinced that the last Rule 23(a) prerequisite, 'adequacy of representation' for the class, ha[d] been met," because of what I considered to be undue delay in Rattray's request for certification of the class and her counsel's lack of experience with class litigation. *See Rattray*, 253 F.R.D. at 452-57. "Nevertheless," I explained that I would "turn to consideration of the requirements of Rule 23(b)." *Id.* at 457.

Second, I concluded that Rattray had not satisfied the requirements of Rule 23(b)(1)(A), which "'covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class."'" *Id.* at 459 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997), in turn quoting Rule 23(b)(1)(A)). I found that Rattray had conceded

11

that there was really little risk of inconsistent liability judgments among the class members, if their claims were brought separately and, in so doing, she had essentially conceded that she could not meet the requirements of Rule 23(b)(1)(A). *Id.* at 458-59. Therefore, I concluded that certification pursuant to Rule 23(b)(1) was not appropriate. *Id.* at 459.

Third, I concluded that certification was inappropriate pursuant to Rule 23(b)(3), which provides for certification of a class when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *see Rattray*, 253 F.R.D. at 459-65. I concluded that "the questions of the existence and constitutionality of a blanket strip-search policy" did not realistically establish that "the class is sufficiently cohesive to warrant adjudication by representation." I also concluded that those questions did not "predominate" over other individualized questions, explaining that I "c[ould not] accept as readily as other courts have been willing to do that the inquiries into whether the facts in individual cases demonstrate reasonable suspicion supporting a strip search in those cases would be *de minimis* or would only arise as to a relatively small number of potential plaintiffs," which I believed was potentially dispositive of each member's liability or damages claim. Rather, I found that those individualized questions actually or realistically predominated. *Id.* at 463-64. Therefore, I concluded that the "predominance" requirement for certification pursuant to Rule 23(b)(3) was not met by Rattray's putative class. *Id.* at 464.

Fourth, for similar reasons, I rejected the "superiority" of class action resolution, also required by Rule 23(b)(3), specifically finding that the case "present[ed] the nightmarish scenario of myriad individualized determinations to decide

12

which potential class members actually belong to the class and which can potentially prove liability and/or damages," making "the logistics of attempting to create a class action out of what are, in reality, a myriad of individualized claims" even more "daunting" than the logistics of a multiplicity of similar actions. *Id*. at 465.  Therefore, I concluded that the case should not be conditionally certified as a class action pursuant to Rule 23(b)(3). *Id*.

I "encourage[d] the disappointed plaintiff [in Rattray's case] to pursue an interlocutory appeal . . . , because [I] recognize[d] that [my] decision [was] against the weight of authority granting class certification in strip-search cases." *Id*.  Rattray did, indeed, pursue an interlocutory appeal, pursuant to Rule 23(f), of my denial of certification of her putative class.  On August 5, 2010, however, the Eighth Circuit Court of Appeals affirmed my denial of class certification, albeit after addressing only the "adequacy of representation" requirement of Rule 23(a)(4), the first of the four requirements for class certification that I had found Rattray's putative class failed to meet. *See Rattray v. Woodbury County, IA*, 614 F.3d 831 (8th Cir. 2010).  Having concluded that I correctly rejected class certification on this ground, the appellate court concluded that it "need not address the district court's alternative conclusions regarding Rule 23(b)." *Id*. at 837.

### D.     Arguments Of The Parties

In support of their Motion To Dismiss in this case, the defendants assert that the applicable statute of limitations for the Barkley Plaintiffs' § 1983 action, Iowa's two-year statute of limitations for personal injury claims, IOWA CODE § 614.1(2), expired between the end of the challenged strip-search policy on October 15, 2007, and the filing of the Barkley Plaintiffs' original Complaint on November 5, 2010.  The defendants contend that the statute of limitations was not tolled during the pendency of

13

the attempt to certify the class action in the *Rattray* case, pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because class certification in the *Rattray* case was denied due to defects in the class itself, that is, failure to satisfy the requirements of either Rule 23(b)(1) or Rule 23(b)(3).  The defendants argue that the current class is nearly identical to the class for which certification was denied in the *Rattray* case and that the Barkley Plaintiffs should not now be permitted to relitigate the certification issue.  Therefore, they contend that the current action should be dismissed.

In their Resistance, the Barkley Plaintiffs concede that they were members of the putative class in the *Rattray* case and did not seek to intervene in that case. Nevertheless, they argue that their individual claims are timely, for various reasons. First, they argue that the statute of limitations was tolled for individual claims pursuant to *American Pipe* from the commencement of the class action in the *Rattray* case to the denial of certification of that class, regardless of the reasons for the denial of class certification.  They also argue that the period of tolling includes the period while Rattray's appeal was pending, asserting that courts that have addressed the issue have embraced that conclusion since the amendment of Rule 23(f) in 1998 allowed less restricted interlocutory appeals of class certification decisions.

Next, the Barkley Plaintiffs argue that, because the Eighth Circuit Court of Appeals affirmed my denial of class certification in the *Rattray* case only on the basis of deficiencies in the *class representative*, not deficiencies in the *class itself*, "*American Pipe* tolling" applies to both their individual claims and their class claims.  Specifically, they argue that, where an appellate court affirms on only one of the alternative grounds on which the district court rendered its decision, only the ground affirmed by the appellate court has preclusive effect, citing RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. *o* (1982).  They contend that allowing them to assert class claims will allow subsequent classes to pursue class claims until a court has definitively determined that

14

the claims are not suitable for class treatment.  They also assert that these defendants have had timely notice of the nature of their individual and potential class claims, from the assertion of nearly identical individual and class claims in the *Rattray* case.

In reply, the defendants argue that RESTATEMENT (SECOND) OF JUDGMENTS § 27 and comment *o* are inapplicable here, because an appeal of denial of class certification does not involve a *final* judgment, but an *interlocutory* order.  The defendants argue that the decision by the appellate court to rule so narrowly here should not affect my prior decision, because the district court ultimately has the final say on whether class certification is appropriate.  For example, they argue that, even if the Eighth Circuit Court of Appeals had overruled my conclusions as to sufficiency of the class representative in the *Rattray* case, I would still have been free to reject class certification on grounds related to the class itself—and that I did, indeed, also deny certification on such grounds.  The defendants argue that the Barkley Plaintiffs should not be able to ignore my undisturbed findings as to deficiencies in the class itself.  Although the defendants address the effect of the appeal of my class certification decision in the *Rattray*  case, they do not address the Barkley Plaintiffs' contention that their individual claims are timely, whatever the reason that class certification was denied.

## II.    LEGAL ANALYSIS

### A.    Applicable Standards

#### 1.    Rule 12(b)(6) and the statute of limitations

As the Eighth Circuit Court of Appeals recently explained,

> "We review de novo the district court's dismissal of an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)" and "accept the factual allegations of the complaint as true." *O'Neil v. Simplicity, Inc.*, 574

> F.3d 501, 503 (8th Cir. 2009).  In addressing a motion to
> dismiss, "[t]he court may consider the pleadings themselves,
> materials embraced by the pleadings, exhibits attached to the
> pleadings, and matters of public record." *Mills v. City of
> Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing
> *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079
> (8th Cir. 1999) (noting that the same standard applies to a
> Rule 12(b)(6) motion to dismiss)).  *A court may dismiss a
> claim under Rule 12(b)(6) as barred by the statute of
> limitations if the complaint itself establishes that the claim is
> time-barred.  Jessie v. Potter*, 516 F.3d 709, 713 n. 2 (8th
> Cir. 2008).

*Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (emphasis added).  Thus, a
Rule 12(b)(6) motion is the proper vehicle for the defendants to challenge the timeliness
of the Barkley Plaintiffs' claims of constitutional violations pursuant to 42 U.S.C.
§ 1983.

### 2.    *The applicable statute of limitations*

Section 1983 contains no statute of limitations, *Wilson v. Garcia*, 471 U.S. 261,
280 (1985), and no federal statute of limitations governs such actions.  *Board of
Regents, Univ. of New York v. Tomanio*, 446 U.S. 478, 484 (1980); *Carr v. Aubuchon*,
969 F.2d 714, 716 (8th Cir.1992).  When such a void in federal statutory law occurs,
federal courts have repeatedly "borrowed" the state laws governing an analogous cause
of action.  *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975).  Thus,
courts have applied the personal injury statute of limitations of the state in which the
court sits to constitutional claims brought pursuant to § 1983.  *Owens v. Okure*, 488
U.S. 235, 236 (1989); *Wilson*, 471 U.S. at 280; *Wycoff v. Menke*, 773 F.2d 983, 984
(8th Cir. 1985), *cert. denied*, 475 U.S. 1028 (1986).

There is no dispute that the applicable statute of limitations here is Iowa's two-
year statute of limitations for personal injury actions in IOWA CODE § 614.1(2).  *See
Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) ("Iowa's personal injury

16

statute of limitations for personal injury actions, requiring claims to be brought within two years after the action accrues, has been applied to section 1983 actions." (citing IOWA CODE § 614.1(2) and *Wycoff*, 773 F.2d at 984)).  There is also no dispute that the statute of limitations on the Barkley Plaintiffs' claims began to run no later than October 15, 2007, when the Woodbury County Jail's strip-search policy was withdrawn, or that the Barkley Plaintiffs did not file their individual or class claims until more than two years after that date, on November 5, 2010.  Thus, whether the Barkley Plaintiffs' claims are barred by the applicable statute of limitations depends upon the applicability of the so-called "*American Pipe* rule," which may have tolled the Barkley Plaintiffs' claims during the prior attempt to certify a similar class asserting similar claims in the *Rattray* case.

### 3.  The tolling rule for members of a prior putative class

#### a.  The general rule

The Eighth Circuit Court of Appeals has explained the "*American Pipe* rule," as follows:

> In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification—at least where certification is denied for failure to meet the numerosity requirement of Rule 23 of the Federal Rules of Civil Procedure.  *Id.* at 552-53, 94 S.Ct. 756.  The *American Pipe* rule is designed to protect the federal procedural interest by preventing duplicative litigation from purported class members during the period that certification is pending.  *Id.* at 553, 94 S.Ct. 756.  The *American Pipe* rule has been extended to purported members of the class who later file individual suits rather than intervene.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

> Whether the *American Pipe* rule applies to subsequent class actions, however, depends on the reasons for the denial of certification of the predecessor action. *See Yang v. Odom*, 392 F.3d 97, 111 (3d Cir. 2004) ("[W]here class certification has been denied solely on the basis of the lead plaintiffs' deficiencies ... not because of the suitability of the claims for class treatment, *American Pipe* tolling applies to subsequent class actions."), *cert. denied*, 544 U.S. 1048, 125 S.Ct. 2294, 161 L.Ed.2d 1088 (2005); *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc) (holding that the filing of a previous class action tolled the applicable statute for a later class action where the later action was not an attempt to relitigate the denial of certification or correct a procedural deficiency in the purported class).

*Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 997 (8th Cir. 2007).

### b.    *Individual claims vs. class claims*

The Barkley Plaintiffs assert, and the defendants never clearly dispute, that tolling pursuant to the "*American Pipe* rule" applies, at least in some circumstances, to subsequent class claims as well as to subsequent individual claims.   The Barkley Plaintiffs also contend that, in *Great Plains Trust*, the Eighth Circuit Court of Appeals recognized that *individual* claims are tolled during the pendency of a prior class action, without regard to the reasons that certification of the prior class is denied, even if the tolling effect of the prior class action for subsequent *class* claims depends upon the reasons for denial of certification of the prior class.   This argument is central to the Barkley Plaintiffs' assertion that, whether or not *American Pipe* tolling applies to their class claims, their individual claims were tolled, and their Amended Complaint is not subject to dismissal in its entirety.   Although the defendants do not appear to challenge the Barkley Plaintiffs' assertion that their individual claims are tolled, only whether or not their class claims are tolled, I believe that it is appropriate to explore further the

18

differences, if any, in the circumstances in which *American Pipe* tolling applies to subsequent individual claims and subsequent class claims.

In *American Pipe*, the Supreme Court established a tolling rule for subsequent claims by putative members of a failed class action, as follows:

> In the present case the District Court ordered that the suit could not continue as a class action, and the participation denied to the respondents because of the running of the limitation period was not membership in the class, but rather the privilege of intervening in an individual suit pursuant to Rule 24(b)(2).  We hold that in this posture, *at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,'* the commencement of the original class suit tolls the running of the statute *for all purported members of the class who make timely motions to intervene* after the court has found the suit inappropriate for class action status.  As the Court of Appeals was careful to note in the present case, '(m)aintenance of the class action was denied not for failure of the complaint to state a claim on behalf of the members of the class (the court recognized the probability of common issues of law and fact respecting the underlying conspiracy), not for lack of standing of the representative, or for reasons of bad faith or frivolity.' 473 F.2d, at 584. (Footnote omitted.)

*American Pipe*, 414 U.S. at 552-53 (emphasis added).  Thus, in *American Pipe*, the Court considered the tolling effect of the prior class action *only* as to individual claims, not as to class claims, and then only as to intervenors, not as to plaintiffs who initiate separate actions.  Therefore, *American Pipe* does not appear to address at all the question of whether class claims are tolled.

Some courts have suggested that there is a split in the Circuit Courts of Appeals on the question of whether *American Pipe* tolling even applies to subsequent *class* claims.  *See generally Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d

560, 563 (7th Cir. 2011).[5]   Assuming that there is such a split, the decision in *Great Plains Trust* places the Eighth Circuit Court of Appeals squarely on the side of the split

---

[5] In *Sawyer*, the Seventh Circuit Court of Appeals noted,

> As the district judge and the parties understand the cases, five courts of appeals have concluded that successive suits that rely on *American Pipe's* tolling principle never may proceed as class actions, while three courts of appeals have held otherwise.   *Compare Basch v. Ground Round, Inc.*, 139 F.3d 6 (1st Cir. 1998); *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987); *Salazar–Calderon v. Presidio Valley Farmers Association*, 765 F.2d 1334, 1351 (5th Cir. 1985); *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988); and *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994) (all holding that the successive suits cannot proceed as class actions), with *Yang v. Odom*, 392 F.3d 97, 111 (3d Cir. 2004); *Great Plains Trust Co. v. Union Pacific R.R.*, 492 F.3d 986, 997 (8th Cir. 2007); and *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139, 1147–49 (9th Cir. 2000) (en banc) (all holding that the successive suits may be certified as class actions).   The parties ask us to choose sides.

*Sawyer*, 642 F.3d at 563.   The Seventh Circuit Court of Appeals concluded, however, that "[t]here is no conflict," explaining,

> The decisions collected in the preceding paragraph concern, not the statute of limitations or the effects of tolling, but the preclusive effect of a judicial decision in the initial suit applying the criteria of Rule 23.   The opinions that *Atlas Heating* reads as holding that a plaintiff who relies on *American Pipe* to toll the statute of limitations cannot represent a class actually hold instead that a decision declining to certify a class in the first suit binds all class members, who cannot try to evade that decision by asking for a second opinion from a different judge.   Class members must abide by the first court's understanding and application of Rule 23.

holding that tolling *does* apply to subsequent class claims, because that decision unambiguously states that "the *American Pipe* rule applies to subsequent class actions," albeit with some limitations.  492 F.3d at 997.

I acknowledge that the decision in *Great Plains Trust* is susceptible to a reading that distinguishes between the tolling effect of the prior class action on subsequent individual claims and subsequent class claims, noting that, as to subsequent class claims, whether tolling applies depends upon the reason that prior class certification was denied.  *Id.*  ("Whether the *American Pipe* rule applies to subsequent class actions, however, depends on the reasons for the denial of certification of the predecessor action.").   Even so, I will consider further whether such a distinction between subsequent class claims and subsequent individual claims is warranted.

In *American Pipe*, the Supreme Court initially referred to tolling of individual claims "at least" where class action status has been denied solely because of failure to satisfy the "numerosity" requirement.  *American Pipe*, 414 U.S. at 552-53.  Although this statement certainly does not suggest that tolling applies *only* when the denial of

---

*Sawyer*, 642 F.3d at 563-64; *see also Bright v. United States*, 603 F.3d 1273, 1285 (Fed. Cir. 2010) (noting a split in the circuits on the considerably narrower question, not at issue here, of whether *American Pipe* permits the tolling of opt-in class actions under the Age Discrimination in Employment Act (ADEA)).

As the Ninth Circuit Court of Appeals recently recognized, the Circuit Courts of Appeals are also "split on whether *American Pipe* tolls the statute of limitations for an individual among a plaintiff-class who files an untimely, individual lawsuit before the disposition of a certification motion in the class action litigation.  *Compare State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1234 (10th Cir. 2008) (tolling limitations period); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) (same), *with Wyser–Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) (refusing to toll limitations period under Ohio law); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) (refusing to toll limitations period)."  *Albano v. Shea Homes Ltd. Partnership*, 634 F.3d 524, 535 n.8 (9th Cir. 2011).  That issue is not presented in this case, however.

class certification was for failure to satisfy that requirement, the Court's reference to the appellate court's "careful" listing of the requirements that had *not* been the basis for denial of class certification does suggest that, if any of those requirements *had* been the basis for denial of class certification, tolling of individual claims might not have been available. *Id*. Ultimately, however, the Court stated the rule that it found to be "most consistent with federal class action procedure" was "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id*. at 554. This statement of the rule places no limitation on the tolling effect of a prior class action on individual claims based on the reason that the prior class action was not certified.

In the Supreme Court's subsequent decision in *Crown, Cork & Seal*, the Court addressed whether *American Pipe* tolling applies only to the individual claims of putative class members who intervened after class certification was denied, or also applies to the individual claims of putative class members who filed separate actions after certification was denied. *See Crown, Cork & Seal*, 462 U.S. at 348-49. The Court concluded that *American Pipe* was "not to be read so narrowly" as to apply only to intervenors. *Id*. at 350. Rather, the Court held that "[t]he filing of a class action tolls the statute of limitations 'as to asserted members of the class,' [*American Pipe*, 414 U.S.] at 554, 94 S.Ct., at 766, not just as to intervenors." *Id*.; *see also id*. at 353-54 (stating the modified rule as follows:  "'[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' [*American Pipe*,] 414 U.S., at 554; 94 S.Ct., at 766.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits

or to intervene as plaintiffs in the pending action."). The Court did not suggest that there were any restrictions on the applicability of *American Pipe* tolling for intervenors or plaintiffs filing individual suits based on the reasons that class certification had been denied, however. *See Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (noting that "the *Crown, Cork & Seal* Court appeared to have untethered this tolling rule from any necessary connection to the reasons for denying certification"). [6]

The defendants have not cited, and I have not found, any decisions of the Supreme Court or the Circuit Courts of Appeals imposing any restrictions on the tolling effect of a prior class action on subsequent individual claims of putative members of the failed class based on the reasons that class certification was denied. Rather, courts have considered whether subsequent individual claims bear a proper relationship to the failed class's claims and involve the same defendant or defendants as the failed class's claims. *See, e.g., Guy v. Lexington-Fayette Urban County Gov.*, 2012 WL 1592745, *10 (6th Cir. May 2, 2012) (slip op.) (explaining prior cases as holding that "the tolling caused by the filing of one putative class action cannot toll statutes of limitations for claims against a different defendant in a second putative class action," and "filing one class action will not toll the statutes of limitations on all the claims or class actions a putative class member might have; it only tolls the claims asserted in the filed class action."); *Hatfield v. Halifax, P.L.C.*, 564 F.3d 1177, 1188 (9th Cir. 2009) (noting that, when applying the "*American Pipe* rule," as construed under California law, "tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence" (internal quotation marks and citations omitted)).

---

[6] The Tenth Circuit Court of Appeals has extended the "*American Pipe* rule" to plaintiffs who file individual claims even before the decision is rendered on class certification in a separate class action. *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008).

Courts have, however, imposed restrictions on the tolling effect of a prior class action on subsequent *class* claims, based on the reasons that the prior class was denied certification.  For example, in *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002), the Third Circuit Court of Appeals expressly held that tolling of subsequent class claims was only available in the limited circumstances in which "a district court declines to certify a [prior] class for reasons unrelated to the appropriateness of the substantive claims for certification," as opposed to denial of certification for deficiencies of the class representative.  *See McKowan*, 295 F.3d at 389; *see also id.* at 386 (noting that the lead plaintiff was not attempting to "resuscitate a class that a court ha[d] held to be inappropriate as a class action," but a class that "was not rejected because of any defects in the class itself but because of [his] deficiencies as a class representative").  Interestingly, the Third Circuit Court of Appeals found the rationale for tolling of subsequent class claims only in these circumstances, in part, in the Supreme Court's identification in *American Pipe* of the litigants "for whom the *American Pipe* tolling rule was designed."  *See id.* at 389.  The Third Circuit Court of Appeals explained,

> As the [Supreme] Court stated,
>
> > In cases such as this one, where the determination to disallow the class action was made upon considerations that may vary with such subtle factors as experience with prior similar litigation or the current status of a court's docket, a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.
>
> *American Pipe*, 414 U.S. at 553-54, 94 S.Ct. 756.

*McKowan Lowe & Co., Ltd.*, 295 F.3d at 389.   The Third Circuit Court of Appeals reiterated the limitation on tolling of class claims stated in *McKowan* in *Yang v. Odom*, 392 F.3d 97, 107-08 (3d Cir. 2004).

As noted, above, the Eighth Circuit Court of Appeals relied on *Yang* for its formulation of the tolling effect of a prior class action on a subsequent class action.   *See Great Plains*, 492 F.3d at 997.   Therefore, I conclude that individual claims of intervenors and plaintiffs who file separate actions are tolled pursuant to the "*American Pipe* rule" without regard to the reasons for denial of class certification in the prior class action, but subsequent class claims are tolled only "'where class certification has been denied solely on the basis of the lead plaintiffs' deficiencies . . . not because of the suitability of the claims for class treatment.'"   *Id.* (quoting *Yang*, 392 F.3d at 107-08).

### c.   *The tolling period*

The Barkley Plaintiffs argue, next, that the period of tolling pursuant to the "*American Pipe* rule" extends through any appeal of the decision denying certification of the prior class action.   I do not read the defendants' reply to challenge that specific contention.   Instead, the defendants argue that it is not just the appellate court's decision, but the district court's decision, that determines the grounds on which a prior class was denied certification and, hence, whether subsequent class claims were or were not tolled.[7]   Nevertheless, I will consider whether subsequent claims are tolled only through the district court's denial of certification of a prior class or through an appeal of that denial.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals has addressed this question, other federal courts have.   In *Armstrong v. Martin Marietta*

---

[7] I will return to the question of whether the grounds for denial of certification of the prior class action that determine whether subsequent class claims are tolled are those relied on by the district court or those relied on by the appellate court, below, after I consider whether tolling extends through the period of any appeal.

*Corp.*, 138 F.3d 1374 (11th Cir. 1998) (en banc), a majority of the Eleventh Circuit Court of Appeals held that the statute of limitations was *not* tolled during the pendency of an interlocutory appeal, at least under former Rule 23.   138 F.3d at 1378 ("[W]e hold that the tolling of the statute of limitations ceases when the district court enters an interlocutory order denying class certification.").

More specifically, in *Armstrong*, the majority noted that, in *American Pipe*, the Supreme Court had stated "'that the commencement of the class action in this case suspended the running of the limitation period *only during the pendency of the motion to strip the suit of its class action character.*'"   *Armstrong*, 138 F.3d at 1382 (quoting *American Pipe*, 414 U.S. at 561, with emphasis added in *Armstrong*).   The majority reasoned that, while the Supreme Court had not been presented with an argument that tolling should continue through appeals and had not "squarely" rejected such an argument in *American Pipe*, "[t]he Court, however, clearly assumed that tolling should end when the district court denies class certification, not after the appeals process has run and some later final order is entered."   *Id.*   The majority also read the Supreme Court's subsequent decision in *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), as implying "strongly" that "the statute of limitations for filing an individual suit (and for intervening to litigate one's claim) begins to run again as soon as the district court denies class certification—although an excluded putative class member whose individual claim is barred by the statute of limitations may still intervene for the purpose of appealing the denial of class certification after final judgment."   *Id.* at 1382-83.   The majority concluded that *Chardon v. Soto*, 462 U.S. 650 (1983), also implied, and various federal courts had expressly held, that tolling does not extend through an appeal of denial of class certification.   *Id.* at 1383-84 (citing and explaining cases).

In *Armstrong*, the majority also stated, "Practical considerations lead us to conclude that, if class certification is denied in whole or in part, the statute of

26

limitations begins to run again as to excluded putative class members as of the date of the district court's order denying certification." *Id*. at 1385.   Those practical considerations included the fact that, even though a district court's class certification decision is not a "final decision" within the meaning of 28 U.S.C. § 1291, but an "interlocutory" order not appealable as a matter of right, such an order could be appealed in only three ways:   (1) after final judgment or after a partial judgment pursuant to Rule 54(b); (2) by interlocutory review pursuant to 28 U.S.C. § 1292(b); or (3) by mandamus. *Id*. The majority concluded that each kind of review was rare, that such review even more rarely led to a reversal of the district court's determination that the class was not suitable for certification, and that extending the tolling period through such appeals could lead to procedural and other problems, including undue delay of putative class members' later claims. *See id*. at 1385-90.

As the Barkley Plaintiffs contend, the majority in *Armstrong* acknowledged that a proposed amendment to Rule 23(f) "h[e]ld[ ] the potential to change this analysis if passed in its current form," because it gave courts of appeals discretion to permit an appeal of an order granting or denying class certification, although it did not stay proceedings in the district court unless the district court or the court of appeals so ordered. *Id*. at 1390 n.35. Specifically, the court observed, "If the rule passes, and if it significantly increases the frequency of interlocutory appeals of class certification orders—a development which would depend in large part upon how this court chooses to exercise the discretion granted to it by the proposed rule—then we may revisit the decision taken today, and might for instance allow continued tolling of statutes of limitations during the pendency of an appeal under the new rule." *Id*. However, the court declined to "speculate" on that point. *Id*.

The dissenter believed that the proposed amendment adding Rule 23(f) should operate to extend tolling through an appeal.   He also concluded that there was no

reason to wait for enactment of the amendment adding Rule 23(f), because the court could exercise its supervisory authority to fashion an interim rule based on appropriate policy considerations to extend tolling through any appeal. *Id*. at 1194-95 (Hatchett, C.J., dissenting).

The proposed amendment to Rule 23 discussed in *Armstrong* was enacted later in 1998. Notwithstanding the suggestion of the en banc majority in *Armstrong* that it might do so, the Eleventh Circuit Court of Appeals has not yet revisited the question of whether or not *American Pipe* tolling extends through any interlocutory appeal, in light of amended Rule 23(f). The Barkley Plaintiffs have not cited any cases finding or any evidence showing that amended Rule 23(f) opened the floodgates for appeals of denials of class certification or that appeals, accepted by the Circuit Courts of Appeals exercising the discretion that Rule 23(f) provided them to take interlocutory appeals of denials of class certifications, had resulted in significantly more denials of class certifications being reversed. *See id*. at 1390 n.35 (suggesting that these circumstances might lead the court to reconsider whether tolling continued through any appeal).

Nevertheless, the Barkley Plaintiffs argue that subsequent decisions of other courts have recognized that the amendment to Rule 23(f) in 1998, which broadened the circumstances in which a decision on class certification could be appealed on an interlocutory basis, abrogated the conclusion of the majority in *Armstrong*, and that those courts have, instead, embraced the reasoning of the dissenter that the amendment to Rule 23(f) extends the tolling period through any interlocutory appeal. In support of their assertion that "courts that have addressed the issue" have recognized that tolling extends through the interlocutory appeal period, the Barkley Plaintiffs cite *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 2000 WL 1424931 (E.D.N.Y.), and *Scarvey v. First Fed. Sav. and Loan Ass'n of Charlotte*, 552 S.E.2d 655 (N.C. App. 2001).

28

The Barkley Plaintiffs' failure to cite—or even to acknowledge—that *all* of the federal Circuit Courts of Appeals (or any of them, besides the Eleventh Circuit Court of Appeals in *Armstrong*) to consider the question have not so held is misleading, at best. As the Second Circuit Court of Appeals recently observed,

> This opinion does not further address *American Pipe* tolling, and we intimate no view with respect to whether tolling under *American Pipe* extends through the pendency of a motion for reconsideration or on appeal. We acknowledge, however, that every circuit to have addressed the scope of this doctrine has concluded, as the district court did here, that *American Pipe* tolling ceases upon denial of class certification. *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008); *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *Yang v. Odom*, 392 F.3d 97, 102 (3d Cir. 2004); *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355–56 (Fed. Cir. 2000); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) (en banc); *Andrews v. Orr*, 851 F.2d 146, 149–50 (6th Cir. 1988); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982).

*See generally Giovanniello v. ALM Media, L.L.C.*, 660 F.3d 587, 589 n.1 (2d Cir. 2011).

Moreover, the federal Circuit Courts of Appeals have given cogent reasons for refusing to extend the tolling period after denial of class certification through any appeal of that decision. In *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510 (5th Cir. 2008), the Fifth Circuit Court of Appeals drew a distinction between cases in which the district court had *denied* certification of the predecessor class and cases in which it had *granted* certification of the predecessor class. The court explained that, in the Supreme Court's decisions in *American Pipe* and *Crown, Cork & Seal*, its own decision in *Calderon v. Presidio Valley Farmers Assoc.*, 863 F.2d 384 (5th Cir. 1989), and the

decision of the Third Circuit Court of Appeals in *Edwards v. Boeing Vertol Co.*, 717 F.2d 761 (3d Cir. 1983), *vacated on other grounds*, 468 U.S. 1201 (1984), "the district court's refusal to certify the class was tantamount to a declaration that only the named plaintiffs were parties to the suit." *Taylor*, 554 F.3d at 520.

> Thus, those cases logically concluded that after the district court's denial of certification, the putative class members had no reason to assume that their rights were being protected. Stated differently, they were notified that they were no longer parties to the suit and they should have realized that they were obliged to file individual suits or intervene in the class action. This conclusion follows from the limited inquiry under Rule 23 regarding class certification [which must focus on the requirements of Rule 23, not the merits of the claims.]

*Taylor*, 554 F.3d at 520 (citing *Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 312 (5th Cir. 2005), for the focus of the certification inquiry).  On the other hand, the court explained,

> When a class is certified, . . . the district court has necessarily determined that all of the Rule 23 factors are met.  From that point forward, unless the district court later decertifies the class for failure to satisfy the Rule 23 factors, members of the certified class may continue to rely on the class representative to protect their interests throughout the entire prosecution of the suit, including appeal.  A contrary rule would require certified class members to immediately intervene or file individual suits in the event of a merits dismissal of the class action in the district court.  Such a rule would not work to prevent "needless multiplicity of actions," *Crown, Cork & Seal*, 462 U.S. at 351, 103 S.Ct. 2392, and would ignore the intended benefit of certification—efficient representation of a class of claimants. *See Edwards*, 717 F.2d at 766.

*Taylor*, 554 F.3d at 520-21.

Similarly, in *Bridges v. Department of Maryland State Police*, 441 F.3d 197 (4th Cir. 2006), the Fourth Circuit Court of Appeals noted that, in *Crown, Cork & Seal*, the Supreme Court "adopted the bright-line rule that the statute of limitations 'remains tolled for all members of the putative class *until class certification is denied*' for whatever reason." *Bridges*, 441 F.3d at 211 (quoting *Crown, Cork & Seal*, 462 U.S. at 354, with emphasis added). Like the court in *Taylor*, the court in *Bridges* considered the point at which putative plaintiffs could no longer rely on the putative class action to protect their interests:

> In this case, we conclude that no absentee class member could reasonably have relied on the named plaintiffs, nor the district court, to protect their interests in the period following the district court's 2001 certification denial—particularly in light of the events that followed— even though that certification denial was only for administrative purposes. If the denial order left doubts in the minds of reasonable absent class members whether they would be protected, then the acts that followed entry of that order surely put the issue to rest.

*Bridges*, 441 F.3d at 211. The acts following entry of the order denying class certification included the named plaintiffs' failure to file a reply brief in support of certification, the named plaintiffs' actions in settling only their individual claims against the defendants, and the named plaintiffs' notice to the court that all actions, including damages actions, would proceed as individual actions. *Id*. at 211-12. The court found that these acts were all foreseeable, in light of the district court's order denying class certification, "because the denial, even if only administrative, relieved the district court of its obligation to determine class certification 'at an early practicable time.'" *Id*. at 212 (quoting Rule 23(c)(1)(A)). As the court concluded,

> If this 2001 administrative order was not the moment when the statute of limitations stopped tolling, then at *no moment* did it stop tolling, for there was no other order

denying class certification.  *See Crown, Cork & Seal*, 462 U.S. at 353-54, 103 S.Ct. 2392.  The would-be plaintiffs' position essentially argues for some new rule to cut off tolling based on how their ambiguous filings might be construed.   Not only would their position inordinately prejudice defendants by exposing them, potentially, to perpetual tolling, but it also demonstrates the patent unreasonability of relying on the class representative alone to pursue and protect the class members' interests after the court's 2001 order denying class certification.

The *American Pipe* rule provides a narrow exception to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, for whatever reason.   By articulating such a rule, the Supreme Court remained highly sensitive to the need for certainty of a bright-line rule. Because statutes of limitations provide notice to all parties—to plaintiffs as to a clear date by which to commence an action and to defendants as to a date after which they can rely that stale claims cannot be presented—*American Pipe* cannot be understood to authorize ignoring a district court's administrative order denying class certification in favor of relying on plaintiffs' conduct abandoning all or part of a class action or simply manifesting a loss of interest through inaction.

Thus, even though the district court intended its order denying class certification to be a case management device, the order was notice to objectively reasonable putative class members to seek clarification or to take action.  For when the district court's administrative denial defers to the representative parties who can progressively abandon the class, the necessary clarity of a statute of limitations is destroyed, contrary to the clear intent of *American Pipe* and *Crown, Cork & Seal*, without furthering the purpose of protecting reasonable reliance by absent putative class members.

32

*Bridges*, 441 F.3d at 212-13; *see also Stone Container Corp. v. United States*, 229 F.3d 1354, 1355-57 (Fed. Cir. 2000) (considering "whether the tolling here stopped with the dismissal of the class action by the district court in [a prior class action] or whether it continues until the district court's decision is no longer subject to appeal," and "concluding that tolling ends with the district court's dismissal of the class action," citing *Armstrong*, 138 F.3d at 1380-91).

In the absence of express guidance from the Eighth Circuit Court of Appeals, I conclude that the Eighth Circuit Court of Appeals would join its sister circuits in holding that *American Pipe* tolling ends with the district court's decision denying class certification, not with a decision on any interlocutory appeal. At the time that the district court denies certification, the putative class members know the reasons that the claims of the class are not suitable for class treatment and they are on notice that they can no longer rely on the putative class action to protect their interests. *Taylor*, 554 F.3d at 520; *Bridges*, 441 F.3d at 211. To treat the district court's denial of class certification essentially as a nullity, for purposes of determining when *American Pipe* tolling ends, just because a party attempts an interlocutory appeal of that order, flies in the face of the goal of prompt determination of the viability of class actions apparent from the requirement in Rule 23(c)(1)(A) that the district court decide the certification issue "[a]t an early practicable time"; the requirement in Rule 23(f) permitting prompt appeals, but only in the discretion of the court of appeals and, unless otherwise ordered, without staying proceedings in the district court; the Advisory Committee's comment, concerning amendments in 1986, that "[a] negative determination [by the district court pursuant to Rule 23(c)(1)] means that the action should be stripped of its character as a class action"; and the Advisory Committee's comment, concerning the 1998 amendment adding Rule 23(f), that the short period for seeking permission to appeal "is designed to reduce the risk that attempted appeals will disrupt continuing

33

proceedings." The district court's denial of class certification also provides an appropriate "bright-line" endpoint for the tolling period. *Bridges*, 441 F.3d at 212-13. Finally, the Supreme Court's conception of *American Pipe* tolling gives no hint that it was intended to extend beyond the district court's denial of certification; indeed, the Supreme Court's decisions in *American Pipe* and *Crown, Cork & Seal* suggest that tolling should end with the district court's denial. *See Armstrong*, 138 F.3d at 1382 (citing language in *American Pipe*, 414 U.S. at 561, stating "that the commencement of the class action in this case suspended the running of the limitation period only during the pendency of the motion to strip the suit of its class action character," and language in *Crown, Cork & Seal*, 462 U.S. at 354, stating that, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied and that, at that point, putative class members might "intervene as plaintiffs in the pending action," and from that language concluding that "read[ing] the word 'denied' in the above passage to mean (among other things) 'denied, appealed, denied again, appealed (perhaps again), and denied again'" was untenable and impracticable, as was "read[ing] 'denied' to mean 'finally denied, after all hope for reversal on appeal is gone'"). Nothing in the subsequent amendment of Rule 23 to permit discretionary interlocutory appeals of such denials suggests the intent to modify those Supreme Court decisions.

Therefore, tolling of individual and class claims of putative members ends with the district court's decision denying class certification, not with the appellate court's decision on an interlocutory appeal of the district court's denial of class certification.

### d.   The controlling reasons for the prior denial

As noted above, in Section II.A.3.b., the reasons that certification of the prior class was denied are determinative of whether subsequent class claims are tolled. *See, e.g., Great Plains*, 492 F.3d at 997 ("Whether the *American Pipe* rule applies to

subsequent class actions, however, depends on the reasons for the denial of certification of the predecessor action."). Thus, the question is, whose reasons for denying certification are controlling, the appellate court's or the district court's? The Barkley Plaintiffs assert that only the reason for denying class certification in the *Rattray* case that was expressly affirmed by the appellate court, inadequate representation of the class, is binding on them in this subsequent action. The defendants argue that all of my grounds for denying class certification in the *Rattray* case were either affirmed or left undisturbed by the appellate court, so that all of them are binding on the Barkley Plaintiffs.

I find, first, that the answer to the question of what grounds for the prior denial of class certification are binding on putative plaintiffs in subsequent actions is closely-related to the answer to the question of which court's decision controls the end of the tolling period. If the tolling period ends with the district court's decision denying certification of the prior class, as I have held above, then it follows that the reasons for denying certification that are controlling are also those stated in the district court's decision. After all, the only reasons that exist at the time that class certification is denied, and tolling ends, are those given by the district court. As the Eleventh Circuit Court of Appeals observed, when it considered whether or not tolling should end with the district court's decision or with the appellate court's decision, the Supreme Court contemplated that "denial" of class certification meant the district court's denial, *cf. Armstrong*, 138 F.3d at 1382, and, hence, the district court's reasons for the denial should control. Similarly, as explained above, the Circuit Courts of Appeals that have expressly recognized that tolling ends with the district court's decision, rather than with the appellate court's decision, have done so in part or primarily because the district court's decision put the class members on notice of the deficiencies in the class or the representative. *See, e.g., Taylor*, 554 F.3d at 520; *Bridges*, 441 F.3d at 211. Because

35

the district court's decision provides notice of the deficiencies in the class or the representative, the undisturbed reasons given by the district court should also control whether or not subsequent class claims are tolled.

Even if the appellate court's decision affirming a district court's denial of class certification ends the tolling period, however, I believe that the reasons that control the denial of class certification include any of the *district court's* reasons that are left undisturbed by the appellate court. Although the Barkley Plaintiffs argue that only the appellate court's reasons are controlling, and that reasons given by the district court that are not expressly affirmed by the appellate court have no effect, I conclude that treating the district court's undisturbed reasons for denying a motion to certify the prior class as nullities, when the appellate court affirms on only limited grounds, is inconsistent with the corollary to the *American Pipe* rule limiting tolling of class claims to denials of certification for deficiencies in the representative, not deficiencies in the class, with Rule 23, and with the rationale for the *American Pipe* rule.

First, the Circuit Courts of Appeals, which fashioned the rule limiting tolling of subsequent class action claims to circumstances in which the prior class action was denied certification for reasons *other than* deficiencies of the class itself, considered only the district court's reasons for the denials. *See, e.g., McKowan*, 295 F.3d at 386-89; *Yang*, 392 F.3d at 107-08 and 111 (citing *McKowan*, 295 F.3d at 386); *Great Plains*, 492 F.3d at 997 (citing *Yang*, 392 F.3d at 111). Moreover, even if the appellate decision ends the tolling period, any reasons of the district court left undisturbed by the appellate decision still perform the function of providing notice to putative class members of deficiencies in the class itself. *Cf. Taylor*, 554 F.3d at 520; *Bridges*, 441 F.3d at 211.

Second, treating undisturbed reasons given by the district court for denial of class certification as a nullity would be inconsistent with the goals of prompt

determination of the viability of class actions and the continuing effect of the district court's decision during any interlocutory appeal apparent from the requirements in Rule 23(c)(1)(A) and (f) and the supporting Advisory Committee comments cited above. Nothing in Rule 23 suggests that, when the appellate court expressly affirms a denial of class certification on interlocutory appeal on only some of the grounds cited by the district court, but leaves others undisturbed (as opposed to expressly rejected), only the grounds expressly affirmed continue to have any force or effect in either the original action or a putative plaintiff's subsequent action. To put it another way, nothing in Rule 23 suggests that an interlocutory appellate decision that lets the entirety of the district court's decision stand, even if it expressly affirms only part of the district court's decision, is an invitation to putative plaintiffs to relitigate the class certification issue in its entirety. Clearly, the named plaintiffs in the original action could not relitigate the undisturbed portions of the district court's decision denying class certification in the original action. Why should the result be any different for persons who were putative plaintiffs in the first action when they bring a subsequent action?

Third, nothing in the "*American Pipe* rule" suggests that putative plaintiffs may relitigate undisturbed determinations of the district court leading to denial of class certification in the original action. As the Ninth Circuit Court of Appeals has pointed out, "the courts of appeals agree that *American Pipe* does not 'allow tolling when the district court in the previous action had denied class certification, and when the second action sought to relitigate the issue of class certification and thereby circumvent the earlier denial.'" *Albano v. Shea Homes Ltd. Partnership*, 634 F.3d 524, 535 n.7 (9th Cir. 2011) (quoting *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1147 (9th Cir. 2000) (en banc)); *Yang*, 392 F.3d at 104 ("No Circuit allows plaintiffs the benefit of *American Pipe* tolling to sequentially relitigate the denial of class certification based on a Rule 23 deficiency in the class itself."). Ignoring determinations of the district court

left undisturbed after an interlocutory appeal would, likewise, allow putative plaintiffs in a subsequent action to relitigate the issue of class certification and thereby circumvent the earlier denial.

The Barkley Plaintiffs argue that RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. *o* (1982), requires a different conclusion. This argument does not bear scrutiny or require much discussion. Section 27 states,

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 27. Comment *o* states, in the part pertinent here,

> If the appellate court upholds one of these determinations [on which the district court's judgment is based] as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. *o* (1982). As the defendants point out, § 27 and comment *o* pertain to a "final" judgment, but any appeal of a district court's denial of class certification pursuant to Rule 23(f) is necessarily "interlocutory." Moreover, applying comment *o* to the circumstance of an "interlocutory" decision ignores the fact that the district court's additional, undisturbed determinations must necessarily remain in full force and effect in the case from which appeal was taken and, hence, apply to all putative members of the original class.

I conclude that the district court's reasons for denial of class certification in the original action left undisturbed on interlocutory appeal may not be relitigated by a putative plaintiff in a subsequent action and, where such reasons go the deficiencies in the class itself, subsequent class claims are not tolled.

38

### B.     Application Of The Standards

With the questions above resolved, application of the "*American Pipe* rule" to determine the timeliness of the Barkley Plaintiffs' claims is relatively straight-forward.

As noted above, there is no dispute that the applicable two-year statute of limitations on the Barkley Plaintiffs' claims pursuant to 42 U.S.C. § 1983, "borrowed" from Iowa Code § 614.1(2), *see Wycoff*, 773 F.2d at 984, began to run no later than October 15, 2007, when the Woodbury County Jail's strip-search policy was withdrawn, or that the Barkley Plaintiffs did not file their individual or class claims until more than two years after that date, on November 5, 2010.   Thus, the Barkley Plaintiffs' claims are untimely, unless the running of the statute of limitations was tolled by the "*American Pipe* rule" during the pendency of the putative class action in the *Rattray* case.

### 1.     Prerequisites to application of tolling rules

As to prerequisites for application of *American Pipe* tolling, the putative class and their claims bear a proper relationship to the failed *Rattray* class's claims and defendants.   *See, e.g., Guy*, 2012 WL 1592745 at *10 (explaining that "the tolling caused by the filing of one putative class action cannot toll statutes of limitations for claims against a different defendant in a second putative class action," and "filing one class action will not toll the statutes of limitations on all the claims or class actions a putative class member might have; it only tolls the claims asserted in the filed class action."); *Hatfield*, 564 F.3d at 1188 (noting that, when applying the *American Pipe* rule, as construed under California law, "tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence" (internal quotation marks and citations omitted)).

Indeed, the defendants in the *Rattray* case and this case are identical.  The putative classes are also nearly identical, as the side-by-side comparison, below, shows:

| *Rattray Putative Class* | *Barkley Putative Class* |
|---|---|
| All persons arrested on a serious misdemeanor charge and strip searched pursuant to defendant jail's across-the-board strip search policy from February 13, 2005 until October 15, 2007 at 3:00 p.m.[8] | All persons arrested on a serious misdemeanor charge *who were not admitted to the general jail population*, and were strip searched, *including visual body cavity inspection,* pursuant to Defendant's [sic] across-the-board strip search policy from *February 1, 2006* until October 15, 2007 at 3:00 p.m.[9] |

---

[8] *Rattray v. Woodbury County*, No. C 07-4014-MWB, Plaintiff's Brief In Support Of Her Motion Directing That Action Proceed As Class Action (docket no. 44-6), 5.  The plaintiff in *Rattray* acknowledged that the class period for this class was shorter than the period originally pleaded, because she had determined that the class period would end with the withdrawal of the policy in question.  *See id.* at 5 n.1.

[9] Barkley Plaintiffs' Second Amended Complaint, ¶ 17 (emphasis added to highlight differences from the *Rattray* class).  As noted above, the putative class was defined somewhat differently in the Barkley Plaintiffs' Amended Complaint, the pleading in response to which the defendants filed their Motion To Dismiss, as follows:

> All persons arrested on a serious misdemeanor charge and strip searched, *including visual body cavity inspection,* pursuant to Defendant's [sic] across-the-board strip search policy from *February 1, 2006* until October 15, 2007 at 3:00 p.m.

Barkley Plaintiffs' Amended Complaint, ¶ 2 (emphasis added to highlight differences from the *Rattray* class).  The redefinition of the putative class in the Second Amended Complaint does not, in my view, have any impact upon the defendants' Motion To Dismiss.  This is so, because it simply redefines the class consistent with the Supreme Court's decision in *Florence v. Board of Chosen Freeholders of the County of*

The Barkley Plaintiffs also assert, and the defendants do not dispute, that they were all putative plaintiffs in the *Rattray* case.   The claims in the two actions are also nearly identical, that is, in both cases, the representative plaintiffs assert individual claims and claims on behalf of the putative class for unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution against both the individual defendants and the institutional defendant arising from the strip searches to which they were subjected.

### 2.    *The tolling period*

The tolling period, pursuant to *American Pipe*, is "the period that certification [wa]s pending" in the *Rattray* case.   *See Great Plains*, 492 F.3d at 997.   Thus, the tolling period here began on October 31, 2007, when Rattray was granted leave to amend her complaint to add claims on behalf of a putative class.   As explained above, the tolling period ended with my denial of the motion to certify the *Rattray* class, on September 2, 2008, not with the decision on interlocutory appeal affirming my denial, on August 5, 2010.   *Taylor*, 554 F.3d at 520; *Bridges*, 441 F.3d at 211.   Thus, the tolling period was approximately ten months, but than two years passed after I denied class certification in the *Rattray* case before the Barkley Plaintiffs filed their putative class action on November 5, 2010.   At that point, both their individual claims and their putative class claims are time-barred under the two-year statute of limitations for personal injury claims in Iowa, IOWA CODE § 614.1(2), applicable to their § 1983 claims.   *See Wycoff*, 773 F.2d at 984.   Because their claims are barred, they are subject to dismissal pursuant to Rule 12(b)(6).   *See Illig*, 652 F.3d at 976 ("A court may

---

*Burlington*, 566 U.S. ___, 132 S. Ct. 1510 (2012), and specifies that visual body cavity searches were conducted, an allegation made elsewhere as to the representative plaintiffs and the putative class members in the Amended Complaint.   It does not change the timeliness of any individual or putative class claims.

dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred."). This conclusion is fully dispositive of the defendants' Motion To Dismiss.

### 3.  *Alternative conclusions*

Nevertheless, I will also consider—for the sake of argument and/or in the alternative—whether any claims are time-barred, if the tolling period ends with the appellate court's decision on interlocutory appeal. It is appropriate to do so, because whether the tolling periods ends with the district court's decision denying class certification or the appellate court's decision on interlocutory appeal is a question of first impression in the Eighth Circuit.

Assuming that the decision of the Eighth Circuit Court of Appeals affirming my denial of class certification in the *Rattray* case ended the tolling period, only about two weeks of untolled time had run from the date that the challenged jail policy was withdrawn, on October 15, 2007, until the filing of Rattray's class claims on October 31, 2007, and the statute of limitations did not begin to run again for approximately 45 months, until August 5, 2010, the date of the appellate court's decision, and ran only three more months before the Barkley Plaintiffs filed their initial Complaint, including class claims, on November 5, 2010. Thus, as the Barkley Plaintiffs have alleged, in their definition of the putative class, members of the putative class who were subjected to the allegedly unconstitutional strip searches on or after February 1, 2006, would potentially have timely claims, if the appellate court's decision affirming denial of class certification in the *Rattray* case ends the tolling period. Claims within this limitations period would include those of the named plaintiffs, each of whom was allegedly subjected to an unconstitutional strip search after that date (in Barkley's case, on September 25, 2006; in Dawdy's case, on July 18, 2007; in Ben Curry's case, on July

19, 2007; in Jennifer Curry's case, on July 10, 2007; and in Simon's case, on November 12, 2006).

If the date of the appellate court's decision affirming denial of class certification in the *Rattray* case is the end of the tolling period, the *individual* claims of the named plaintiffs are timely under the "*American Pipe* rule," which tolls individual claims without regard to the reasons that class certification was denied in the prior action. *See Great Plains*, 492 F.3d at 997.   On the other hand, because the district court's undisturbed reasons for denying class certification are controlling, even if the appellate court's decision ends the tolling period, the Barkley Plaintiffs cannot assert timely claims on behalf of another putative class, because such claims were not tolled during the pendency of the *Rattray* class action.   This is so, because I denied class certification in the *Rattray* case on the basis of deficiencies in the class itself for class action treatment. *See Great Plains*, 492 F.3d at 997 (stating that subsequent class claims are tolled only "'where class certification has been denied solely on the basis of the lead plaintiffs' deficiencies . . . not because of the suitability of the claims for class treatment.'" (quoting *Yang*, 392 F.3d at 107-08)).   Specifically, I found that the *Rattray* putative class could not be certified, because there was really little risk of inconsistent liability judgments among the class members, if their claims were brought separately, thus failing to meet the requirements for certification pursuant to Rule 23(b)(1)(A), *Rattray*, 253 F.R.D. at 458-59, and because individualized questions actually or realistically predominated nor was a class action a superior method of resolving them, thus failing to meet the requirements for certification pursuant to Rule 23(b)(3), *see id.* at 463-64—all deficiencies in the class itself—as well as because of deficiencies in the class representation, a prerequisite to certification pursuant to Rule 23(a), *see id.* at 452-57.   Thus, even if the appellate court's decision ended the tolling period for claims

by putative class members, class claims were not tolled, and would now be subject to dismissal as untimely. *See Illig*, 652 F.3d at 976.[10]

## III.   CONCLUSION

Only if the Barkley Plaintiffs are correct (1) that the appellate court's decision affirming denial of class action treatment in the predecessor class action ends the *American Pipe* tolling period for their claims, and (2) that the appellate court's decision also establishes the only reasons that class certification was denied in the prior case would both their individual and class claims be timely. However, I have rejected both propositions. Instead, I conclude that the district court's decision ends the tolling period. I also conclude that the district court's reasons for denial of class certification in the predecessor action that were left undisturbed on interlocutory appeal may not be relitigated by a putative plaintiff in a subsequent action and, where such reasons go to the deficiencies in the class itself, subsequent class claims are not tolled.

THEREFORE, the defendants' January 10, 2011, joint Motion To Dismiss (docket no. 5) is **granted** (and for the same reasons, the defendants' May 22, 2012, Motion To Dismiss (docket no. 29) on identical grounds is also granted), and the

---

[10] If my undisturbed reasons for denying certification of the *Rattray* class were not controlling as to the timeliness of the Barkley Plaintiffs' class claims, and the Barkley Plaintiffs were, thus, permitted to relitigate the question of certification of their putative class, I would undoubtedly reach the same conclusion that the class was deficient pursuant to Rules 23(b)(1)(A) and 23(b)(3) that I did in *Rattray*, as these are the same grounds on which the Barkley Plaintiffs assert that their nearly identical putative class claims are appropriate for class action treatment.

Barkley Plaintiffs' individual and class claims are **dismissed as untimely** pursuant to Rule 12(b)(6).

      **IT IS SO ORDERED**.

      **DATED** this 23rd day of May, 2012.

*Mark W. Bennett*
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA